IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June, 2000 Session

## FIRST UTILITY DISTRICT OF KNOX COUNTY, TENNESSEE v. ELEANOR JO JARNIGAN-BODDEN

**Appeal from the Circuit Court for Knox County**
**No. 2-26-99       Harold Wimberly, Jr., Judge**

**FILE JULY 19, 2000**

**No. E1999-01674-COA-R3-CV**

The property owner objected to service of process and asserted due process violations relating to a utility district easement condemnation. Service of process by publication was proper notice to the non-resident Cayman Islands resident, there was no showing that the condemnation for public purpose was not necessary, and there was no right for the property owner to demand a jury of view to determine the proper easement for a water line. Judgment of the Trial Court is affirmed and the case remanded for determination of the compensation due the property owner for the taking.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; and Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J. and HERSCHEL P. FRANKS, J. joined.

Linda J. Hamilton Mowles, Knoxville, Tennessee, for the appellant, Eleanor Jo Jarnigan-Bodden.

John A. Lucas, Knoxville, Tennessee, and Nash E. Long, III, Charlotte, North Carolina, for the appellee, First Utility District of Knox County, Tennessee.

### OPINION

#### Background

In this highly-contentious utility easement condemnation proceeding, even the basic facts of the case are in dispute and argued on appeal by the parties. For the sake of clarity, only

those facts and procedural actions relevant to the issues on appeal are presented here. First Utility District of Knox County, Tennessee ("Plaintiff") is a public municipal corporation that operates a water supply and waste water treatment system in Knox County. As part of an expansion of the utility system, Plaintiff's board identified routes for water lines and related facilities, along with temporary construction easements and permanent easements necessary to effectuate this service expansion plan. The expansion plan, and related easements, was approved by the requisite regulatory authorities. One parcel with frontage on Keller Bend Road in Knox County affected by the expansion plan is owned by Eleanor Jo Jarnigan-Bodden ("Defendant"), a resident and citizen of the Cayman Islands. Apparently, Defendant, as was her right, rejected Plaintiff's efforts to negotiate acquisition of a ten-foot easement along the edge of Defendant's Keller Bend Road parcel, leading to Plaintiff's Complaint for Condemnation filed January 14, 1999.

The Complaint details the specific need for the easement sought, describing the property in detail and attaching drawings from an engineering survey performed as part of the utility expansion plan. Plaintiff ascribed a value of $951.60 to the right of easement sought, based upon the tax valuation of the parcel. On January 18, 1999, process was served at the property at issue upon Joe Jarnigan, an uncle of Defendant who rents the property and apparently resides thereon. On February 18, 1999, Defendant filed a document styled, "Special Appearance and Objection to Right to Take Based on Lack of Proper Service and Notice as Well as Lack of Necessity" (hereinafter, "Objection"). In the Objection, Defendant denied jurisdiction of the Trial Court based upon failure to execute service on Defendant. Defendant admitted receiving a copy of the Complaint, but averred that she did not receive notice of the hearing date adequate to arrange an appearance, and asked the Trial Court to forestall condemnation until a hearing date Defendant could ". . . be available to participate in her own defense . . .." In addition to this objection to jurisdiction, Defendant argued that the law requires a jury of view be empaneled to determine the appropriate property for condemnation, and asserted that the taking at issue was not necessary and should not be allowed by the Trial Court. Although not specifically objecting to the $951.60 valuation stated by Plaintiff, Defendant averred that the easement at issue would "have a significant negative impact" on the value of Defendant's property, requiring compensation.

Apparently in response to Defendant's assertion in the Objection that, due to her status as a non-resident, notice must be given by publication, on July 13, 1999, the Trial Court ordered notice of the condemnation action ". . . be published, for four (4) consecutive weeks, in a newspaper of general circulation in Knoxville, Knox County, Tennessee."[1] The notice was published in the Knoxville News-Sentinel on four consecutive Fridays, July 16, July 23, July 30 and August 6, 1999. On August 19, 1999, Defendant filed a "Renewal of Defendant's Objection to Plaintiff's Right to Take and Defendant's Motion for Order Summoning Jury of View." As suggested by the heading, this document, among other things, argued that a jury of view must set aside, by metes and bounds, the property to be taken, and to set the compensation for the easement.

---

[1] Plaintiff avers that the publication order resulted from an Affidavit of the Necessity of Service Upon Defendant by Publication filed with the Trial Court July 12, 1999, but no such filing appears in the record of the Trial Court.

On August 20, 1999 Defendant filed for a continuance of the condemnation hearing set for August 27, 1999. On August 27, 1999 the Order of Possession on appeal was entered by the Trial Court and filed by the Clerk of the Trial Court. Several hours later on this same date, a document styled, "Motion to Dismiss or, in the Alternative, Answer to Complaint Seeking Condemnation," was filed by Defendant. The affidavit of Defendant originally filed in February 1999 was once again filed September 7, 1999. Other motions, relating to efforts to stay the immediate possession granted Plaintiff in the August 27 Order of Possession were filed by Defendant prior to the present appeal.[2]

## Discussion

After removing Defendant's averments of fact and argument from her statement of issues, the issues posed in this appeal are allegations of error by the Trial Court in ordering immediate possession of the condemned easement in favor of Plaintiff, failure of Plaintiff to secure proper service of process, and error in ordering condemnation without impaneling a jury of view. Though couched in argument replete with statements based upon factual interpretation, the issues raised in this appeal pose questions of law. "Since we are dealing exclusively with conclusions of law, our standard of review on appeal is *de novo* without a presumption of correctness." *Nutt v. Champion Intern. Corp.*, 980 S.W.2d 365, 367 (Tenn. 1998) (*citing Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn.1993)).

Taking Defendant's issues in their logical order, first we address the service of process in this matter. It appears that Defendant's arguments relating to service of process upon her uncle are moot as the Trial Court did not rely upon the return signed by Joe Jarnigan in asserting jurisdiction over Defendant. Defendant's remaining argument asserting deficiency in service centers upon her view that the Order of the Trial Court that notice be published for four consecutive weeks requires a twenty-eight day period of publication, rather than the twenty-one day period. First, simple logic dictates that publication for four consecutive weeks means four occurrences of publication. From the first publication to the second spans seven days; from the second publication to the third adds seven more days; and from the third publication to the fourth brings an additional seven-day period, with the result that, from the first date of weekly publication to the fourth, twenty-one days transpire.

As supplemental authority on appeal as to this point, Defendant filed the case of *Lowenstine v. Gillespie*, 74 Tenn. 641, 6 Lea 641 (Tenn. 1881). Instead of supporting Defendant's position, *Lowenstine* actually defeats her argument. In *Lowenstine*, most of the relevant discussion is invested in analyzing a miscalculation in an earlier opinion cited on appeal, but the Court explains that when there is a requirement of publication for four consecutive weeks and the additional requirement that the last date of publication occur seven days before the hearing date, twenty-eight days must elapse between the date of first publication and the hearing date. This is entirely

---

[2] Defendant originally applied for appeal under T.R.A.P. Rule 10, which this Court denied as improper, since Defendant had an appeal as of right arising from the condemnation to file under T.R.A.P. Rule 3. Defendant subsequently filed under T.R.A.P. Rule 3, under which this appeal proceeds.

supportive of Plaintiff's legal, as well as mathematical, position on the issue, as the *Lowenstine* Court added seven days to the twenty-one day period of the four consecutive weeks of publication to reach a total period of twenty-eight days. Here, there is no additional seven-day period with which to contend. Therefore, the number of days required for four consecutive weekly publications is twenty-one, not twenty-eight. A twenty-eight day period of consecutive weekly publication with each publication being one week apart would result in five publications of the notice, not four. Defendant cites T.C.A. § 29-16-105 as requiring that notice be given at least five days prior to hearing. There is no dispute that more than five days elapsed between the last date of publication as ordered by the Trial Court, August 6, 1999, and the date of the hearing, August 27, 1999.

Defendant also argues that thirty days should have passed between the date of last publication and the date of the hearing. The record does not reflect that this issue was presented to the Trial Court, and is therefore not properly before this Court on appeal. The argument on appeal is based upon an apparent scribner's error, in that the published notice does list a hearing date of August 27, 1999, and also states that Defendant must file an Answer within thirty days of the last date of publication, August 6, 1999. However, the Order of the Trial Court directing notice by publication does not contain any reference to a thirty-day period, and no reason for ignoring the stated hearing date of August 27, 1999 is proffered by Defendant. Additionally, Defendant's counsel, who represented Defendant in the matter since at least February 18,1999, received service of the Order of Service by Publication in July, with the Order stating that ". . . the Clerk of the Court shall enter upon the rule docket an Order requiring the Defendant to appear at a certain day therein named, being a rule day, and defend said Complaint Seeking Condemnation . . .."

Defendant's allegation of error concurring the jurisdiction of the Trial Court because of the claimed failure of service of process in the manner of publication of the notice is not well taken. The actions of the Trial Court related to this issue are affirmed.

Defendant also alleges error the Trial Court's denial of a continuance from the August 27, 1999 hearing date, when the continuance request was not made until August 20, 1999. The publication order provided counsel for Defendant more than thirty days notice of the pendency of a hearing in the matter before the date was set by the Clerk of the Trial Court, and Defendant's argument on appeal of insufficient notice of the August 27 hearing is unsupported by the record as a whole.

Next, Defendant argues that the alleged failure of service violated her due process rights, in that Defendant was not allowed to argue that Plaintiff failed to show that the condemnation of the easement along the edge of Defendant's parcel is necessary. As this taking is for a public use, and the record does not support the existence of clear and palpable abuse of power, or fraudulent, arbitrary or capricious action, this is not a proper question for judicial determination.

In *Southern Ry. Co. v. City of Memphis*, 126 Tenn. 267, 148 S.W. 662 (1912), our Supreme Court stated:

[W]here ... [a] taking is for a public use, the only remaining restriction on the

-4-

sovereign power is to pay the fair and reasonable value of the property taken, generally denominated "just compensation." This includes an adequate and sufficient procedure to be provided by the sovereign to ascertain the fair value of the property to be taken, and payment in cash, or a good and solvent bond to secure the payment, at the time the property is taken. And, like the purpose of the taking, these are judicial questions.... (citations omitted).

But all other incidents of the taking are political questions, for the determination of the sovereign, and not judicial questions, for the determination of the courts. Selecting the property to be taken, as contradistinguished from similar property in the same locality, determining its suitableness for the use to which it is proposed to put it [sic], as well as deciding the quantity required, are all political questions, which inhere in and constitute the chief value of the power to take. This power would be a vain and empty thing, if the owner could contest the advisability of taking his property rather than his neighbor's, or if he could interpose as a defense to the taking that other property could be found which would suit the public purposes better, or that he, the owner, was of opinion and could prove that the public needed more or less than the quantity proposed to be taken. The power to take would be of small value, if the thing to be taken, in its quantity, quality, and locality, could be determined by another and adverse interest.

126 Tenn. at 282-83, 148 S.W. 662. "The determination by a condemning authority of the necessity for the taking is not a question for resolution by the judiciary and, absent a clear and palpable abuse of power, or fraudulent, arbitrary or capricious action, it is conclusive upon the courts." *Duck River Elec. Membership Corp. v. City of Manchester*, 529 S.W.2d 202, 204 (Tenn.1975) (citations omitted).

*City of Maryville v. Edmondson*, 931 S.W.2d 932, 934-935 (Tenn. Ct. App. 1996).

Defendant's allegation of error in the actions of the Trial Court as to this issue is unsupported in the law.

Defendant argues that under T.C.A. § 29-16-113, a jury of view must be impaneled to determine the location and quantity of the easement sought by Plaintiff. Although not specifically addressed in the Order of Possession on appeal, Plaintiff in the Complaint sought condemnation under T.C.A. § 7-82-101 *et seq*., the Utility District Law of 1937. Plaintiff responds that T.C.A. § 7-82-305 authorizes a utility district to elect between the procedures set out in Title 29, Chapter 16 and immediate possession as sought in this case.

Any district has the power to condemn either the fee or such right, title interest, or easement in the property as the board may deem necessary for any of the purposes mentioned in this chapter, and such property or interest in such property may be so acquired whether or not the same is owned or held for public use by corporations,

associations or persons having the power of eminent domain, or otherwise held or used for public purposes; provided, that such prior public use will not be interfered with by this use. Such power of condemnation may be exercised in the mode or method of procedure prescribed by title 29, chapter 16, or in the mode or method or procedure prescribed by any other applicable statutory provisions now in force or hereafter enacted for the exercise of the power of eminent domain; provided, that where title to any property sought to be condemned is defective, it shall be passed by decree of court. Where condemnation proceedings become necessary, the court in which such proceedings are filed shall, upon application by the district and upon the posting of a bond with the clerk of the court in such amount as the court may deem commensurate with the value of the property, order that the right of possession shall issue immediately or as soon and upon such terms as the court, in its discretion, may deem proper and just.

T.C.A. § 7-82-305.

Plaintiff cites as "other applicable statutory provisions" Title 29 Chapter 17 of the code.

(a) Said petition shall name as defendants all persons who have or may have an interest in or lien upon said property or property rights, shall state the residence of each if known and if unknown that fact shall be stated, shall contain a description of the property or property rights sought to be condemned, the civil district in which the same is located, a description of the project to be constructed and the amount of damages to which the condemner has determined that the owner will be entitled, which amount shall be deposited with said clerk, and shall pray that the property be condemned and decreed to the condemner. It shall not be necessary to specify the interest or claim of the several defendants.

(b) Notice of the filing of said petition shall be given the owner of the property or property rights at least five (5) days prior to the taking of any additional steps in the case. If the owner is a nonresident of the state or unknown, notice shall be given by publication as provided by law in similar cases in chancery.

(c) After the expiration of five (5) days from the date of the giving of said notice if the right to take is not questioned, the condemner shall have the right to take possession of the property or property rights sought to be condemned, and if necessary to place such condemner in possession thereof, the court shall issue a writ of possession to the sheriff of the county to put the condemner in possession.

T.C.A. § 29-17-803.

Further support for Plaintiff's argument on the issue of Defendant's right to a jury of view as to the size and location of a utility easement is found in a related statute.

The only issue or question that shall be tried upon exception shall be the amount of compensation to be paid for the property or property rights taken, but in case of adverse claimants of such compensation, the court may require the adverse claimants to interplead, so as to fully determine the rights and interests of such claimants.

T.C.A. § 29-17-808.

We agree with Plaintiff's interpretation, that T.C.A. § 7-82-305 sets forth the availability of alternatives to the procedures of T.C.A. § 29-16-113, and that the actions of the Trial Court are consistent with the procedure set out in T.C.A. § 29-17-803, without the need to impanel a jury of view. As previously discussed, "[s]electing the property to be taken, as contradistinguished from similar property in the same locality, determining its suitableness for the use to which it is proposed to put it [sic], as well as deciding the quantity required . . ." are decisions that lie most properly with the condemning body. *City of Maryville v. Edmondson*, 931 S.W.2d at 935.

As for Defendant's issue alleging error in the Trial Court's order of immediate possession, T.C.A. § 7-82-305, quoted above, provides that "the court in which such proceedings are filed shall, upon application by the district and upon the posting of a bond with the clerk of the court in such amount as the court may deem commensurate with the value of the property, order that the right of possession shall issue immediately or as soon and upon such terms as the court, in its discretion, may deem proper and just." The record does not support any abuse of discretion by the Trial Court in granting Plaintiff the immediate possession sought for the easement in question. The judgment of the Trial Court as to these issues is affirmed.

## Conclusion

The Order of the Trial Court is affirmed, and this case is remanded for determination of the compensation due Defendant for the taking, and for such further proceedings as may be required, if any, consistent with this Opinion. Costs of this appeal are assessed to the appellant, Eleanor Jo Jarnigan-Bodden.

_____
D. MICHAEL SWINEY, JUDGE